## No. 11,964.

### LOUIS E. BALL VS. JULIUS LEVIN & CO.

Joint owners of a saw-mill plant, having tortiously and wrongfully entered upon the partnership premises on a Sunday when the other joint proprietor was absent, and removed therefrom certain important parts of the machinery essential to the operation of the mill, and carried them away, for the expressed purpose of preventing the latter from operating the mill, and kept them away for more than a month, during which time the mill was idle.

*Held,* That the co-proprietor, who has thus had his rights invaded and prevented from operating the plant, is entitled to actual and punitive damages commensurate with his loss and injury.

APPEAL from the Tenth Judicial District Court for the Parish of Rapides. *Andrews, J.*

---

*Robert P. Hunter* and *H. L. Daigre* for Plaintiff, Appellee.

---

*White & Thornton* for Defendants, Appellants.

Argued and submitted December 18, 1895.
Opinion handed down January 6, 1896.
Rehearing refused February 10, 1896.

The opinion of the court was delivered by

WATKINS, J. This is an action in damages *ex delicto*, and the plaintiff demands one thousand three hundred and twenty-six dollars actual, and one thousand dollars punitive, or vindictive damages.

There was a trial by jury and a verdict for seven hundred and fifty dollars, in favor of the plaintiff, and after an unavailing effort to obtain a new trial, the defendants have appealed.

In this court plaintiff answered the appeal, and requested that the amount of damages awarded be so increased as to allow him the full amount claimed; and contemporaneously therewith he filed a motion, in which he demands judgment against the defendants for the additional sum of " twenty per cent. of such judgment as may be finally recovered in this   *   *   *   court" in his favor, as damages for a frivolous appeal.

The petition alleges that plaintiff was sole owner of the Magnolia saw-mill, situated in the parish of Grant, operating it at a daily average profit of thirty-nine dollars; and that on the 9th of September, 1894, he sold to the defendants an undivided one-half interest in the plant.

It further represents that defendants, " just as soon as they purchased the half interest of said mill, did maliciously, clandestinely, illegally, wrongfully and tortiously remove from said mill a part of its machinery, to-wit: the cylinder-head and steam chest valve, and so crippled the mill that petitioner could not run same from the month of September to the 24th of November, 1894, causing the mill to stop, and preventing its operation;" and causing the loss and damage he has complained of, and for which he prays judgment.

The answer is, practically, a general denial, coupled with an averment that defendants did no unlawful act.

The antecedent history of the transactions leading up to the incident complained of may well be given, as throwing some light on the matter in controversy.

On the 28th of October, 1893, the plaintiff and R. B. May pur-

chased the saw-mill jointly, for the sum of twenty-one hundred dollars on terms of credit, and therefor they executed in favor of the defendants, as vendors, fourteen notes, of one hundred and fity dollars each.

Thereafter, May sold his interest to R. L. Ball, the brother of plaintiff, and they erected the buildings, placed the machinery in position and set it in motion.    They paid three of the purchase notes, and were, to all appearances, operating the plant profitably.

Subsequently R. L. Ball sold his interest to Louis E. Ball, the plaintiff; and the latter conveyed to the defendants, Julius Levin & Co., on the 10th of April, 1894, above specified—the plaintiff retaining, under the new arrangement, charge of the operation of the mill, and the defendants assuming control of the financial department of the saw-mill business.

The price agreed on was one thousand six hundred dollars, and that was by the parties attributed to plaintiff's notes in favor of the defendants, squaring accounts between them—less about one hundred and seventy dollars.

The plaintiff being in arrears to the hands at the saw-mill, and without means to operate the business satisfactorily, it was agreed that the defendants should advance the money and reimburse themselves out of the current cash receipts.

Under this arrangement the mill was operated with partial success, but not without some misunderstandings and disputes between the individual joint co-proprietors.

Ultimately defendants made up their minds to discontinue the business and dissolve the partnership; and accordingly they gave the plaintiff due notification to that effect.

The proposition met with his disapproval.

In this condition of affairs the transaction chiefly complained of by the plaintiff, as resulting in his damage and injury, arose.

As a witness, the plaintiff says:

"My brother and I prepared to start the mill under that agreement, and, before we could start, they [Messrs. Seiss and Levin, two of the defendants] came, on Sunday, while I was away. I didn't see this done, but was informed of it.    They took off the valve, and the packing out of the cylinder.    The valve they took off was one out of the steam chest, and the packing rings out of the cylinder.    That disabled the machinery so that it could not run.    That was done on Sunday, while I was away."

Again:

" After this machinery was disabled it was a difficult matter to re-place those valves and rings. It was quite expensive, and would have to take time. I think it was about the 9th of September, 1894, that they disabled the machinery. The mill was closed from the 9th of September to about the 24th of November."

Again:

"During the time, from the 9th of September to the 24th of No-vember, I was there and anxious, ready and willing to go on and operate the mill. There was nothing to prevent me doing so besides the mill being disabled."

This witness and his brother testify that since the mill was sold to C. E. Ball & Son, in November, 1894, it has been continuously op-erated at a profit.

Mr. Seiss, one of the defendants above mentioned, as a witness makes this statement, viz.:

"I, together with Mr. Jacob Levin [another member of the de-fendant firm] and Mr. Roberts went to the Magnolia saw-mill and removed the portions of machinery mentioned. I don't remember the date, but it was some time in the early part of September. It was on Sunday. We determined to remove this machinery on the Saturday before. I wish to correct my previous statement and say that it was on Sunday morning that we determined to remove the machinery. Mr. Jacob Levin came to me at Levin, with word from Mr. Julius Levin, to go there and remove that machinery—to re-move such parts of it as would prevent Mr. L. E. Ball from operating the plant. We went there that day and made the removal. We brought this removed part to Levin.

      *    *    *    *    *    *    *    *

I took this machinery openly, in broad daylight; there was no one present at the time but a little boy  *  *  *  It would have cost thirty-five dollars or forty dollars to have replaced this ma-chinery, and it would have taken ten or fifteen days to have done it."

This is the testimony for the defendants in chief; and it not only corroborates that of the plaintiff, but places the transaction in a bolder, broader light. It is an open, frank avowal of a most unwar-ranted trespass upon the plaintiff's property during his absence, without his knowledge, and to his great injury and detriment. It was done in pursuance of an agreement between the defendants.

Such portions of the machinery were detached from the mill "as would prevent Mr. L. E. Ball (the ɪlaintiff) from operating the plant." This trespass was planned, agreed upon and consummated on *Sunday*, when no one was present but a small boy, and they openly and publicly carried the pieces of machinery away—entirely beyond the reach of the plaintiff, and kept them for more than six weeks, during which time the mill remained idle and could not be operated.

True it is that the mill had not been in operation for some weeks prior to the date it was dismantled; but the plaintiff was in readiness to operate it at all times, and was only prevented from doing so by the defendants. And the immediate cause of the tortious and unwarranted action of the defendants in dismantling the mill was the announced determination of the plaintiff to open up the mill.

As the result of these transactions the plaintiff was constrained to consent to a sale of the plant to third parties.

It is quite evident that defendants had no right " to take the law into their own hands;" and we think plaintiff is entitled to some remuneration, and that defendants should be made to pay for their unwarrantable trespass upon his rights.

But we think the verdict of the jury is excessive and should be reduced to the sum of three hundred dollars; and that, as thus reduced, the judgment appealed from should be affirmed.

It is therefore ordered and decreed that the verdict of the jury and the judgment thereon based be reduced to the sum of three hundred dollars, and that, as thus reduced, the same be affirmed.

It is further ordered and decreed that the plaintiff be taxed with the costs of appeal.